IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMIR ENGLISH, LORENE GREEN and ARLENE C. ANTHONY, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO.  13-0468-KD-N |
| BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY and WANDA HANNON, in her Individual Capacity, ) ) ) ) ) ) | |
| Defendants. ) | |

# ORDER

This action is before the Court on the motion for summary judgment, brief in support of the motion, proposed determinations of undisputed facts and conclusions of law, and evidentiary material filed by defendants Board of School Commissioners of Mobile County and Wanda Hannon (the Defendants) (docs. 24-27); the response in opposition to the motion, the affidavits, and response to the proposed determinations of undisputed facts and conclusions of law, and evidence in support filed by plaintiffs Amir English, Lorene Green and Arlene C. Anthony (the Plaintiffs, or English, Green and Anthony) (docs. 32-36) and the Defendants' reply and evidence in support (docs. 38-39). Upon consideration of the record and the submissions of the parties, and for the reasons stated herein, the Defendants' motion for summary judgment is **GRANTED.**

I.        **Procedural History**

Plaintiffs filed their complaint on September 20, 2013, alleging that the Defendant Board discriminated against English, Green and Anthony on basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1983

(Count One), that the Board retaliated against English and Green in violation of Title VII, and 42 U.S.C. § 1983 (Count Two); that Defendant Hannon engaged in unlawful discrimination based on race, sex, and retaliation, in violation of the Equal Protection Clause of the 14th Amendment made actionable by 42 U.S.C. § 1983 (Count Three); and that the Board discriminated against Plaintiff English on basis of sex in violation of Title VII, and 42 U.S.C. § 1983 (Count Four). (Doc. 1)

Plaintiffs allege that they informed Hannon of their "strong interest in taking on more administrative duties within the school system" and that "despite this knowledge", Hannon "repeatedly placed less qualified white nurses in supervisory positions, while ignoring the advancement requests of the Plaintiffs." (Id.)  Plaintiffs allege that they were "denied the opportunity to perform supervisory duties as were routinely given white nurses, and when Green and English complained about the difference, they were retaliated against by Defendant Hannon by being given the most undesirable placements and duties." (Id.)

As relief, Plaintiffs seek declaratory judgment as to the alleged discrimination and retaliation, an award of the "administrative duties that are repeatedly given to white nurses", and compensatory damages, attorney's fees, cost and expenses of bringing this action. (Id.) Defendants Board and Hannon filed their motion for summary judgment, supporting evidence, and their reply.  Plaintiffs filed their response and supporting evidence. Therefore, the motion is now ready for consideration.

## II.     Findings of Fact

Defendant Board of School Commissioners of Mobile County, Alabama, is a five (5) member Board that operates and governs the Public School System in Mobile County, Alabama. The Board is the Plaintiffs' employer and has over three (300) full-time employees.  Defendant

Dr. Wanda Hannon, R.N., the Supervisor of Health and Social Services for the School System, is Plaintiffs' immediate supervisor.

Plaintiff Amir English is an African-American male who is a Registered Nurse and has been employed by the Defendant since 2004.  He has a Masters Degree in Nursing. Plaintiff Lorene Greene is an African-American female who has been employed by the Defendant since 1988.  She has a Masters of Science Degree in Community Mental Health Nursing. Plaintiff Arlene Anthony is an African-American female who has been employed by the Defendant since January 1999. She has a Masters Degree in Nursing. At the relevant time period, they were all employed as Visiting Health Nurses and were assigned to rotating positions.

The Plaintiffs filed a charge of discrimination with the EEOC on or after December 14, 2012.  At that time, the Defendant employed thirty-eight (38) Registered Nurses as Visiting Health Nurses: Thirty-four (34) were in nine (9) month positions, two (2) were in ten (10) month positions, and two (2) were in twelve (12) month positions.

All nurses have the title of Visiting Health Nurse and have either a nine, ten or twelve month contract.  All nurses are paid based upon a system matrix which takes into account the length of their contract, their educational degrees and their length of service. Nurses may be assigned to a specific school, *i.e.*, a school-based nurse, or assigned to rotate among different schools, *i.e.*, a rotating nurse.  At the time Plaintiffs filed their EEOC charge, three (3) of the nine (9) month nurse positions had been hired directly by a school and paid from that school's budget. The remaining thirty-one (31) positions were rotating nurse positions.  Nursing assignments are made at the beginning of the school year but may change based upon the needs of the School System and its students.

The School System also provides nurses for a number of buses, as well as for field trips and other extra-curricular activities. Staffing is separate from assignments. Staffing is done on a daily basis to cover various needs due to absences, illnesses, vacations, etc.

The job duties of a Visiting Health Nurse include providing health appraisals of students, authorizing the use of funds for medical and dental appointments, reporting suspect child abuse, and consulting community agencies to obtain services and assist in implementing policies and procedures for the control of communicable diseases. The Visiting Nurses also perform other duties as requested by the Principal or Supervisor of Visiting Health Nurses.

According to plaintiffs, school-based nurses and rotating nurses are responsible for the health and welfare of the students and generally have the same duties. Depending on the number of students and the size of the schools to which the nurses are assigned, some assignments may be more labor intensive than others and result in more paperwork for the nurses to complete. The nurses must complete state mandated reports and audits such as immunization audit as well as vision, hearing, and scoliosis screenings and testing which may be grade specific and not performed at each school. They also coordinate, assess and triage First Aid Rooms, perform first aid procedures, respond to school emergencies, assist students when hospitalization is needed, teach health education, provide in-service sessions for faculty and staff at the schools, assessments for sports related physicals, ADHD determinations and referrals, Home Bound referrals, hearing and vision screening for Special Education, home and hospital visits, preparing Care plans, assessing paperwork for the administration of medication, and many other routine nursing services.

Judy Lovelace is a Visiting Health Nurse for the System. She is a nine (9) month nurse. She has been employed with the system at least since the late 1990's. When Dr. Hannon became

the Supervisor, her nursing staff was small.  Over the years the number of Visiting Health Nurses increased as did the requirement to place nurses on buses and to have nurse for various field trips.  As the number increased, Dr. Hannon delegated staffing duties to Lovelace, in part because of her experience prior to working at the System.

Lovelace worked with staffing for the past ten years and is familiar with the nurses, bus drivers, and the schools.  She is the first one to fill in a position either on a bus or performing procedures.  (Doc. 27-5, Hannon affidavit, p. 2-3)  Thus, Lovelace not only arranges for other nurses to fill positions when someone is not available, but she too fills the positions.  Lovelace was not assigned to a school and was not responsible for duties of a school nurse.

In the summer of 2012, Lovelace accepted a position with the Chickasaw City School System.  As a nine (9) month nurse, she would not have started her job at the Mobile County Public School System until August 2012   The Board began the process to hire a new nine (9) month Visiting Health Nurse in August 2012.  Before hiring a nurse for the vacancy, Lovelace contacted Dr. Hannon and said that she was interested in returning.  Dr. Hannon recommended to the Board that Lovelace be rehired.  The Board approved and upon rehire, Dr. Hannon assigned Lovelace the same duties she had before leaving the System.

English, Green and Anthony allege that before Lovelace left the school system they had asked Hannon if they could perform administrative duties instead of their duties as school nurse and rotating nurses.  After Lovelace left the school system, they specifically asked Hannon if they could have Lovelace's administrative duties.  English states that Hannon told him that he could not take on Lovelace's duties after she resigned because he was not a twelve (12) month nurse, but then approximately two months later, Lovelace was rehired as a nine (9) month nurse like English.

Lovelace's duties did not affect her pay. She was not paid more or less than any other comparable Visiting Health Nurse.  However, Lovelace was paid less than the Plaintiffs because she did not have a Masters Degree.

According to the Defendants, from the beginning of the 2012 school year until Lovelace was rehired, her duties were performed by Dr. Hannon; Sharon Bailey, a white female nurse; and Mary Montgomery, an African-American female nurse.  Bailey and Montgomery are twelve (12) month nurses.  For the 2012-2013 school year, the "Health Services Department 2012-2013 RN Assignments" showed Sharon Bailey, a white nurse, as assigned to the duties that Lovelace had been assigned the year before. (Doc. 33-1, Doc. 33-2).

### III.     Conclusions of Law

#### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

   **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

   **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

>    ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
>    ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. Rule 56(c) (Dec. 2010).

Defendants, as the parties seeking summary judgment bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the defendants have satisfied their responsibility, the burden shifts to the plaintiffs, as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*,

48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor,* 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

**B. Analysis**

**1. Counts One, Three, and Four**

English, Green and Anthony allege that the Board discriminated against them on basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1983[1] (Count One). The Plaintiffs also allege an Equal Protection claim, via 42 U.S.C. § 1983, against Hannon (Count Three).[2] English alleges that the Board

---

[1] *McMillan v. Fulton County, Ga.,* 352 Fed.Appx. 329, 330 n.1 (11th Cir. 2009) (" The second amended complaint in McMillan I also raised Title VII claims arising from the same set of facts. This court analyzes Title VII and §§ 1981 and 1983 under the same standards. . . . *See Butts v. County of Volusia,* 222 F.3d 891, 893-94 (11th Cir.2000) (holding that in a case involving state actors, there is no liability under § 1981, and such claims merge into the § 1983 claims)).

[2] In the context of evaluating an equal protection claim, when § 1983 is used as a parallel remedy against an individual for an underlying violation of Title VII, the elements of the two causes of action are the same. *Cross v. Alabama,* 49 F. 3d 1490. 1502 (11th Cir. 1995).

discriminated against him on basis of sex in violation of Title VII, and 42 U.S.C. § 1983 (Count Four).

Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). When plaintiffs seeks to prove discrimination through circumstantial evidence, such as here, the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir .2013); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Under that analysis, in order to establish a prima facie case of race or sex discrimination under Title VII, Plaintiffs must show that they 1) are a members of a protected class; 2) were subjected to an adverse employment action; 3) their employer treated similarly situated employees outside of their protected class more favorably; and 4) they were qualified for the position. *Brown v. Jacobs Engineering, Inc.,* 572 Fed. Appx. 750, 752 (11th Cir. 2014).

If the Plaintiffs establish their prima facie case, a presumption of discrimination arises, and the burden shifts to the Board to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.,* 704 F.3d 1327, 1332 (11th Cir.2013).  If the Board produces such evidence, the Plaintiffs must demonstrate that the Board's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir.2012). Overall, Plaintiffs bear the burden of producing sufficient evidence to show that their race or sex "actually played a role in [the Board's decision-making] process and had a determinative influence on the outcome." *Reeves, v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105 (2000).

The Board argues that Plaintiffs cannot make their prima facie case because they cannot establish an adverse employment action.  The Board argues that denial of a lateral transfer or assignment of job duties without increase in position, pay, or job status, does not impact the terms, conditions, or privileges of the Plaintiffs' jobs in a real and tangible way and does not have a tangible adverse effect on the Plaintiffs' employment.

Plaintiffs argue that "there is strong evidence of financial harm and a significant difference in responsibilities." (Doc. 32, p. 7)  Plaintiffs argue that Lovelace had the authority to interview applicants and instruct other nurses where they must report for work – assign them to ride buses or to a school to cover an absence of the regularly assigned nurse.  Plaintiffs also argue that Lovelace's position came with financial benefits because the time she spent riding buses before and after school could be converted to "comp time" which allowed Lovelace to take leave busy times of year and week long leaves from work.  Lovelace could also claim mileage for traveling to bus stops.  Plaintiffs also assert that the administrative duties are less demanding than the rotating or school nurse duties, pointing to their duties and the volume of work they must perform as school nurse and rotating nurses (doc. 32, p. 3-4).

"An adverse employment action is not only an element of the prima facie case, but an element of the claim itself." *McCone v. Pitney Bowes, Inc.* 582 Fed.Appx. 798, 800 (11th Cir. 2014). "An adverse employment action is a serious and material change in the terms, conditions, or privileges of employment." *Id.* (internal citation and emphasis omitted). "Generally, an adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* "The employee's subjective view of the significance

and adversity of the employer's action is not controlling." *Id*. "Rather, the employment action must be materially adverse as viewed by a reasonable person under the same circumstances." *Id*.

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Id.* "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the work place." *Id.* "Indeed, Title VII was not designed to make federal courts second-guess the business judgment of employers" *Id.* "And because work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions." *Id.*

Despite the Plaintiffs' subjective belief that they have to perform more duties than they would if they were given the administrative duties that Lovelace and Bailey performed, "a reasonable person under the same circumstances would recognize that these sorts of problems are commonplace and represent little more than the 'ordinary tribulations' of the work place." *Id*. The Court looks to the fact that there are approximately thirty other school and rotating nurses who are also subject to the same type of job assignments and performing the same type of work as are the Plaintiffs. Because Plaintiffs failed to allege an adverse employment action, they have failed to meet their prima facie case.

Even if Plaintiffs could establish their prima facie case of race and sex discrimination, they have failed to rebut the Board's legitimate non-discriminatory reason for not assigning them Lovelace's administrative duties after her resignation and legitimate reasons for re-hiring Lovelace. The Board's "burden to articulate a non-discriminatory reason is one of production and is 'exceedingly light.'" *Daniel v. Dekalb County School Dist.*, - - - Fed. Appx. - - -, 2014 WL 7271347, *3 (11th Cir. Dec. 23, 2014) (quoting *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir.1983)). "So long as the employer articulates a clear and reasonably specific non-

discriminatory basis for its actions, it has discharged its burden of production." *Daniel*, at *3 (citations omitted)

The Board alleges that Lovelace began the job duties before some of the Plaintiffs were hired and had experience and expertise in those specialized tasks.  The Board also alleges that before adding the position of a nine (9) month nurse in October 2012 (when Lovelace was rehired), there was no other nurse that could be taken from their current assignments to handle those job duties, and therefore, they were performed by Bailey, Montgomery and Hannon.

Plaintiffs attempt to show that the Board's reasons are a pretext by showing they were qualified to perform the job: They had advanced degrees and the prior experience to handle without problems the duties that Bailey and Lovelace performed.  However, asserting that they were also qualified to handle the administrative duties is nothing more than quarreling with the Board's business decision as to how to staff the nurse positions and is not evidence that the Board's reason was a pretext for race or sex discrimination.  *Daniel, at* *4 (11th Cir. Dec. 23, 2014) ("We have held that 'quarrelling with [the employer's] reason is not sufficient.'") (quoting *Wilson*, 376 F.3d at 1088).

Instead, the Plaintiffs must "either directly persuad[e] the court that a discriminatory reason was more likely what motivated the employer or indirectly show[] that 'the employer's proffered explanation is unworthy of credence.'" *Daniel*, at *4 (quoting *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005).  "To establish an employer's reason is pretextual, the plaintiff must prove ' both that the reason was false, and that discrimination was the real reason.'" *Daniel*, at *4 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Plaintiffs have not shown that the Board's reasons were false and certainly have not shown any facts from which discrimination on basis of race and sex could be inferred.

Accordingly, the Board and Dr. Hannon are entitled to summary judgment in their favor as to Counts One, Three, and Four.

### 2. Count Two

Plaintiffs Green and English allege that when they complained about Hannon's denial of "the opportunity to perform supervisory duties as were routinely given white nurses, . . . they were retaliated against by Defendant Hannon by being given the most undesirable placements and duties." (Doc. 1, p. 4)  Defendants Green and English filed their EEOC complaints in December 2012.  They bring Count Two against the Board.

"Under Title VII, an employee has engaged in protected activity if she has: (1) opposed an unlawful employment practice, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII's retaliation provision." *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 776-77 (11th Cir. 2014) (quoting *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a)). *See Walton-Horton v. Hyundai of Alabama*, 402 Fed. Appx. 405, 408 (11th Cir. 2010) ("Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits."); *Tarmas v. Sec'y of Navy,* 433 Fed.Appx.754, 762 (11th Cir.2011) ("There is no dispute that the filing of a claim with the EEOC is a 'statutorily protected activity.'")

Title VII's anti-retaliation framework applies to Green and English's claims brought pursuant to Title VII and § 1983.  Green and English have not offered any direct evidence of retaliation.  When plaintiffs produce only circumstantial evidence to prove retaliation, the Court uses the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  In that regard,

> [t]o make out a prima facie case of retaliation, [English and Green] must establish that (1) [they] engaged in statutorily protected activity, (2) [they] suffered a materially adverse action, and (3) there exists a causal link between the two. If [plaintiffs] establish[] a prima facie case, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. If an employer provides a legitimate non-discriminatory reason, the burden shifts to the plaintiff[s] to show that the employer's given reason is a pretext designed to mask retaliation.

*Smith*, 565 F. App'x at 776-77 (11th Cir. 2014) (internal citations omitted).

If Green and English make a "*prima facie* case of retaliation, the burden of production shifts" to the Board "to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir.2009). If the Board carries this burden of production, the burden shifts to Green and English to demonstrate that the Board's proffered legitimate reasons for taking the adverse action were a pretext for retaliation and that Green and English's protected activity was the "but-for" cause of the adverse action. *Mealing v. Georgia Dept. of Juvenile Justice*, 564 Fed.Appx. 421, 427(11th Cir. 2014) (applying the "but for" analysis at the final step of the *McDonnell Douglas* analysis and citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. ——, ——, 133 S.Ct. 2517, 2534 (2013) for its holding that the plaintiff must demonstrate that his protected activity was the "but-for" cause of the adverse employment decision); *see also Perry v. Alabama Alcoholic Beverage Control Bd.*, - - - F. Supp. - - -, 2013 WL 5347403, *28 (M.D. Ala. Sept. 23, 2013) ("Recently, the Supreme Court has declared that the ultimate issue is whether the retaliation would not have occurred but for the protected conduct" and that "[e]ven if any of the alleged discrete actions of retaliation were sufficient to make out a prima facie case, they would not survive the 'but-for' test" based on the Supreme Court's clarification that the "level of causation" requires plaintiffs to show that the adverse employment action would not have occurred but for the plaintiff's involvement with protected activity").

The Board states that filing the EEOC charge in December 2012 was the statutorily protected activity.  The Board then argues that Green and English cannot make their prima facie case because the job assignments of which they complain were made in August 2013, eight months after their EEOC charges.  The Board points out that there was "virtually no change "in their assignments after the EEOC was filed.  In 2012, English was assigned to Griggs School, but was reassigned to Calloway-Smith School in October 2012, where he remained throughout the 2012-2013 school year.  English continued at Calloway Smith for the 2013-2014 school year.

The Board also argues that Green's assignments as a rotating nurse did not substantially change after she filed her EEOC charge.  For the 2011-2012 school year, Green had been assigned to "Baker, LeFlore, Mertz, Old Shell Road, and St. Johns School for Tomorrow" (doc. 27-1, Green deposition, p. 8). Then for the 2012-2013 school year, Green was assigned to LeFlore, Old Shell Road, Dunbar, Holloway, Heart of Mary, and St. Johns School for Tomorrow (*Id*., p. 8-9).  The Board argues that Green had one small private school (Heart of Mary) added to her assignments in 2012-2013, but there is no evidence that the amount of medical procedures were substantially different.

English did not respond to the Board's argument.  Green responds that she experienced an adverse employment action by being assigned an increase to six schools in 2012-2013 and seven schools in 2013-2014. She also asserts that the type and location of the schools to which she was assigned created more labor, more care and testing, and more driving between the schools.  Green alleges that Lovelace with Dr. Hannon's approval gave her this "strenuous assignment" after the EEOC charge was filed and then refused to alter the assignments upon Green's request.  Green also argues that an inference of causation arises when the adverse employment action occurs soon after the protected activity but the absence of immediacy does

not disprove causation.

In the retaliation context, an adverse employment action is an act that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 2415 (2006). The "materiality of the alleged adverse action is judged by an objective standard." *Foshee v. Ascension Health-IS, Inc.*, 384 Fed.Appx.890, 892 (11th Cir. 2010).

English did not respond to the Board's argument that his assignment did not change. Based on the absence of evidence of any change in his school assignment, the Court finds that he has failed to make his prima facie case of retaliation.

Green has failed to make her prima facie case of an adverse employment action that would dissuade a reasonable person from filing a charge of discrimination. The Court is without any evidence – but for Green's statement that her assignments are more difficult – that her assignments actually constitute, <u>objectively</u>, an adverse employment action. There is no evidence that Green's duties were any more difficult than the duties of the approximately thirty other nurses assigned as rotating nurses in the system. Although the burden is low for establishing a prima facie case, Green cannot rely solely on her self-serving statement to support an objective determination that her assignments are an adverse action. Accordingly, the Board is entitled to summary judgment in its favor as to Green and English's claim of retaliation.[3]

---

[3] Additionally, the McDonnell–Douglas "framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). Thus Plaintiffs' claims may proceed to trial "if the record, viewed in a light most favorable to [them], presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " *Id*. (internal citations and footnote omitted); *see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255–56 (11th Cir.2012) (applying Smith in holding that an employee "d[id] not have to use the *McDonnell–Douglas* framework to survive summary judgment because the record contain[ed] enough non-comparator

## IV. Conclusion

Upon consideration of the evidence and for the reasons set forth herein, the Court finds that Defendants are entitled to judgment as a matter of law as to Plaintiffs' claims. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, the Defendants' motion for summary judgment is **GRANTED.**

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this 26th day of January 2015.

 s / Kristi K DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

evidence for a jury to reasonably infer that [her supervisor] discriminated against [her] because she was pregnant"). An overall review of the facts, viewed in the light most favorable to the Plaintiffs shows that they have failed to present sufficient evidence to create a convincing mosaic of circumstantial evidence from which a jury could reasonably infer that the Defendants discriminated against them on basis of race and gender or retaliated against English and Green for engaging in protected activity.